The fourth district appellate court of the state of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. This is case number 4-2-2-0-1-4-1. That's People v. Jason L. Hills. Would counsel for the appellate please state your name for the record? Yes, your honor. This is attorney Kurt Lovelace representing Mr. Hills. And counsel for appellate, will you please identify yourself for the record? Yeah, this is attorney James Ryan Williams for the state. Thank you, Mr. Lovelace. You may proceed with your argument. Thank you, your honors. This case involves a claim of sexual assault by the alleged victim J.A.W. There's no issue on whether or not Mr. Hills and J.A.W. had sex. The issue is whether or not it was consensual. The two individuals involved, Mr. Hills and J.A.W., tell very different stories. The state, in order to bolster J.A.W.'s version of what happened, called a psychologist who testified that J.A.W. suffered from PTSD because she was sexually assaulted by Mr. Hills. The first time I did a sexual assault case and the state attempted to do this, I filed a motion to have that evidence barred in another case. And I was surprised to see that there is a statute that allows exactly that. So the issue isn't whether or not that evidence should be allowed. The issue is whether or not Jason's trial counsel was ineffective because he failed to do anything about it. He didn't consult with a forensic psychologist. He didn't call a forensic psychologist. He didn't have the alleged victim, in this case, J.A.W., evaluated by a forensic psychologist, which he would have had a right to do. Jason was represented by a public defender. That public defender could have easily asked for funds from the court to hire a forensic psychologist to conduct an exam similar to, or I would argue very different from, the one conducted by the psychologist in this case. I raise this in a post-conviction petition. The judge, who was the trial judge in this case, dismissed it at first stage, stating that this issue had to be raised or it had to be raised on direct appeal. And because it wasn't raised, it was forfeited. The court erred in making this ruling. The court wrote an order that I would argue is a form order that just cited some very inapplicable cases, didn't talk about the facts at all, and basically just claims that this issue should have been raised on a direct appeal. Counsel, before you get to the post-conviction proceedings, can you just remind us of the PTSD evidence relative to the charge that was brought? Sure. Again, this was a case where two individuals had sex. The alleged victim in this case, JAW, claims that she could not consent because she blacked out. She claims that Jason Hills gave her alcohol and a Tramadol pill, and that she blacked out. And then she wakes up five hours later when her boyfriend is knocking at the door. And it's at that point she says to the boyfriend, I think I've been raped. Mr. Hills has a very, very different story where he claims that it was consensual. And there was no evidence presented by the state in the form of any testing that would show that Tramadol was in her system. He says, I never gave her Tramadol. I think both of them agree she had very little alcohol, maybe three swigs of whiskey, throughout an extended period of time. And so the whole case rests on the credibility of the two individuals who tell two completely different stories. And why it's so important, the state forensic or their psychologist, is that the psychologist came in and testified that she met with the alleged victim, JAW, approximately two years later. At the state's request, the state's attorney office arranged for the meeting, met with her, and evaluated her. And then she goes on to testify at trial that she has PTSD because she was sexually assaulted by Jason Hills. And it's that type of evidence in a case such as this that tips the scales, and I believe tips the scales in this case, with the jury. Specifically, the statute, there is a statute that allows for this type of evidence and that it is relevant to the state's burden of proof. So specifically as to PTSD, what do we, what is the significance here relative to the charge? Well, relative to the charge is that she is, suffers from PTSD because she was sexually assaulted, because it wasn't consensual sex. It was what the state used as evidence to prove that this individual was sexually assaulted. And that the statute that you're referring to, Your Honor, and the case law that comes down from that allows a defendant to have their own expert do an evaluation of the alleged victim. And that was not done in this case. So basically this expert, very, very convincing type evidence to a jury to have someone, a psychologist say that this individual that you just heard from on the witness stand testify that she had been sexually assaulted. And my evaluation of my opinion is that that person was sexually assaulted because she suffers from PTSD and nothing was done to rebut that evidence. And again, there were multiple opportunities. There was an opportunity to investigate, find a forensic psychologist and evaluate the look at that forensic psychologist, evaluate what the state's opinion was that an appropriate method and challenge that evidence that could have been used on cross-examination. And not only that, but the alleged victim in this case would have been required to sit down with the defendant's expert and undergo an evaluation so that Jason Hills could have presented evidence that whether or not she actually suffered from PTSD. I know the state in their brief indicates that we don't show, I don't have any evidence to show that she didn't suffer from PTSD. Well, it's a little late. I can't have the forensic psychologist that Mr. Hills hired in post-conviction sit down with JAW and evaluate her. That window is passed. There's no way to do that. So what I did was we hired a forensic psychologist, which should have been done before trial and had that forensic psychologist evaluate the method used by the forensic psychologist that Mr. Hills hired, basically gives an opinion that it's entirely inadequate. There's no objective testing. Basically, the entire opinion rests on self-reporting of symptoms. And so that is the essence of the claim in this case that the judge dismissed saying it should have been raised on direct appeal. I did not represent Mr. Hills on direct appeal. If I would have represented Mr. Hills on direct appeal, I would not have included a claim of ineffective assistance of counsel specifically related to this expert witness. Because if I were to do that, if I were to include that claim saying it's ineffective, defense counsel didn't hire an expert. I think the appellate court in the direct appeal would appropriately say, so what? I mean, what would that forensic psychologist say? And it's that evidence that's outside the record that is in the petition that's attached to the petition that now has to be decided by a judge in post-conviction. And it's inappropriate for that judge to dismiss it at first stage saying that you should have raised that on direct appeal. Mr. Loveless, sort of related to Justice Harris's question, the state didn't use and the psychologist or clinical counselor never said the PTSD was related to a lack of memory or anything along those lines. Is that right? No, I don't. I mean, I don't think that the state offered that evidence or that evidence showed that J.A.W. lacked memory or she was unconscious or anything else. I mean, what it does say, and again, I think it's very powerful evidence, is that she suffers from PTSD because she was this individual at this time. I mean, that is very powerful evidence, especially in a case where you have two people giving two different versions on what happened in a case that involves on whether or not sex was consensual. And again, I can't fathom how this would have been raised at direct appeal without providing evidence outside the record, which again, we've attached to the petition of a forensic psychologist who looks at the report of the state's expert, looks at the testimony of the state's expert and says, here's where this expert opinion falls short as far as the processes, protocols, and methods that should be used in making this determination. They were not used. So that means that that opinion's not a good opinion. So did Vogel go so far as to say that the PTSD was from an assault by this defendant on this date, as you're suggesting, or did she really testify that she has PTSD as consistent with an assault? I mean, I would have to look at the exact verbiage in the testimony. I can't recall that offhand, but I guess my response would be that's exactly what the state is presenting her to show. I mean, and that's part of, to kind of go into the whole PTSD evaluation, because I've handled these cases. I mean, that's part of the problem. Someone can suffer from PTSD, but how do you relate it back to a specific instance versus some other instance, some other traumatic event in their life? And so I think it's a very difficult opinion to reach. However, the state has those type of witnesses available to sit down with someone for an hour, two hours, ask them questions, and then come up with an opinion. Yep, you know what? They suffer from these symptoms, so they suffer from PTSD because they were sexually assaulted. I mean, if she didn't specifically say that, I think the jury could easily reach that conclusion. I think the jury did reach that conclusion in this case. Thank you. That really is the extent of it. There is another section there. I didn't spend a lot of time on it because I do believe that the ineffective assistance of counsel because of the PTSD is such a strong case, but I did raise in the post-conviction petition the issue that the effects of promedol really was not challenged, and that could have been easily challenged by trial counsel in this case. What did the state offer in terms, I think it was from the nurse, that would be contradicted by the material that you submitted? The nurse, I believe, said that it would be heightened effects. Again, I pulled some information outside the record just doing an internet search that lists the different impacts or effects of promedol. I think that in a third stage post-conviction or second stage potentially and third stage that I would try to develop that evidence a little bit more. I think more is necessary, but I wanted to include something in there because I thought that was an important issue that at least addresses that that was not adequately addressed. I think the issue is the three swigs of alcohol and one tramadol over an extended period of time, is that going to knock someone out for an extended period of time? So far what you've unearthed doesn't really contradict the idea that it does heighten the effects. No, I don't think it contradicts that the effects, but again, I don't believe that just the evidence is there and it could be easily challenged that such a small amount of alcohol and one tramadol would not cause the effects that J.A.W. claims. If the court doesn't have any more questions, I'll just wait until rebuttal to try to respond to anything that the appellee might have. Okay, Mr. Lovelace, I see no questions. You will have rebuttal. Mr. Williams, now present your argument, please. May it please the court. Counsel, my name is James Ryan Williams, and it's my privilege to represent the state before this honorable court. First of all, I would just like to sincerely thank the court and the parties for accommodating my family situation, and I would also like to apologize for any inconvenience that it may have occasioned. So starting first with the forensic psychology issue, of course, the defendant raised in his post-conviction petition essentially four very related issues regarding the counsel didn't retain, consult with, or present testimony from their own forensic psychologists. Now, you know, skipping past, you know, moving past just the forfeiture argument and getting more or at least the forfeiture for not raising this on direct appeal, it's curious to me because the supermajority of the discussion so far today seems to be focused on prejudice. And yet in the the first stage petition. So here we are discussing prejudice seemingly for the first time at oral argument. Counsel, before you go forward, I've noted that in your brief, that the suggestion that he didn't address prejudice. But, you know, I circled, I went back and looked at the appellant's brief, and most of page 23 of the appellant's brief, and then pages 25 to 26, the appellant addresses prejudice. So I just suggest to you that at least in my reading of the appellant's brief, he did argue prejudice. All right, well, just moving on to the substance of it, then I would say that this argument otherwise fails with respect to the forensic psychologist. Because, I mean, first of all, the forensic psychologist that they hired for the purposes of the post conviction petition did not dispute that the victim suffered from PTSD, nor did she provide a competing opinion. Essentially, she just scrutinized the diagnostic methodology and opined that it could have been better. And moreover, this PTSD issue for as much as it's stressed today, at least in my reading of the record, was a very minor issue raised in the case. I think the state made one passing reference to it in closing argument. And then in the direct appeal, when the defendant challenged the sufficiency of the evidence, this court thoroughly analyzed the evidence in support of the defendant's conviction and made no reference to this PTSD diagnosis or finding. So again, the state's position is that this was really a relatively minor part of this case. So in that sense, it's not arguable that the defendant, it's not even arguable that the defendant would have been acquitted if only he had hired his own forensic psychologist to essentially just scrutinize the methodology of the state's expert witness. Now, in the briefing, at least, it seemed like there was a greater focus on the Tramadol issue. So to that end, I'll note, you know, defendant complains in his PC that the trial counsel failed to present evidence regarding the effects of mixing alcohol and a pain drug called Tramadol. Now, I would say that this was clearly a matter of trial strategy because the state's evidence on point was fairly limited. I think it was essentially just the victim's testimony that the defendant gave her alcohol and Tramadol, where after she started having trouble keeping her eyes open, and then a nurse testified that alcohol can, mixing alcohol and Tramadol can increase the effects of the drugs. So presenting more evidence on this point or challenging this evidence would have just invited the state to present more evidence on it, which I think that the defendant's post-conviction exhibit establishes would not have been, you know, beneficial to the defense. So while that exhibit doesn't explicitly reference, you know, blacking out, that does include common side effects such as dizziness, drowsiness, and lack of energy, which occur without even mixing with alcohol. And additional side effects include lack of coordination, fainting, confusion, tiredness, and even coma, which of course is, you know, very similar to blacking out. The exhibit further provides an FDA warning that you should not drink alcohol while taking Tramadol and explains that doing so increases the risk of experiencing the aforementioned side effects of mixing these drugs. So given these side effects and the fact that alcohol increases the risk of the side effects, I don't think it's arguable that counsel performed efficiently by failing to present more evidence regarding these side effects, nor was counsel or nor was defendant prejudiced on point because frankly, it's the state's position that presenting more evidence on this point would have been prejudicial to the defense, not beneficial. And unless the court has questions, all right, thank you for your time, your honors. Thank you. I don't see any questions, so we'll move on to rebuttal if there is any. Your honor, first, I guess to, I was looking over the record real quickly to ask, answer the court's question. What was the expert's professional opinion? It was that she suffered from post-traumatic stress disorder. And I think that's where, I think that was the last part of her testimony. But it, again, if you look through the entire transcript, it clearly relates to a sexual assault. So I believe that that's what the jury would have heard in this case. As far as the argument that we didn't include an opinion that disputed the conclusion of the state's expert or a competing opinion as to whether or not really no opportunity to do that. I mean, in order to do that, we would have to have an expert sit down with JAW and do an independent evaluation and reach their own conclusion. All that they, our expert has in this case is the record that we were able to provide, which included the testimony and the report. And so her opinion is limited to what is the appropriate way to do an evaluation of this type. And it was her opinion that it missed the mark in several different areas. Most notably that there's no objective testing. It's all based upon self-reporting from the victim in this case. So I think, really, I think that's the only thing that I have to respond to to the state. I think this is a, the briefs are short. I think it's a fairly concise issue. And again, most notably, there's just no way that this issue should have been raised on direct appeal. And so I have a question for you based on what you just said, suppose we agree with you and send this back, then what's going to happen? Well, I mean, obviously the state will have their opportunity, file a motion to dismiss, and we'll have arguments, second stage arguments as to whether or not we're making a substantial claim. I think that this ultimately has to go to an evidentiary hearing where we put our expert on the stand and the state has an opportunity to cross and our expert testifies as to. Okay. So we don't get out of, off too much here. I thought in your, in your answer or in your argument a minute ago, you were suggesting that your expert still needed to examine the victim. Well, I, you know, I, I think yes, absolutely. I think that is the, is necessary. Um, I, I don't know when that occurs. So, so the, the case law is clear that if your pre-trial and the state introduces, um, or wants to introduce an expert, they have to make the alleged victim available to your expert in order to do an independent evaluation. If the, uh, alleged victim refuses, the, the response is that the state doesn't get to call their expert. Okay. Um, and I think that should have been, should have been done. Um, I, I don't know how that's addressed in post-conviction. I haven't handled one of these types. I don't think there's any case law on it. I would surely argue that, that if we're going to a third stage, um, it would be appropriate in an evidentiary hearing to have our expert evaluate the alleged victim. The, the court and the state, or the state would definitely argue, and the court may agree that that's very intrusive on a, on a, an alleged victim. Um, and I think we could call them because my client is convicted. Uh, I think the state would appropriately call them the victim. Um, and we would just move forward with that evidence of, of how, um, how inappropriate the evaluation of the state's expert was. Uh, and, and then, and then if there were a new trial granted by the trial judge, then we would start over and there'd be an opportunity to, um, have our independent expert. But I would surely argue that going into a third stage, because it is an evidentiary hearing that, that, that very well may be the appropriate time. Because, I mean, there is the possibility, and I, if I were the court, I would want to know what would the opinion of the expert be. Um, but again, those are third stage issues, and then we're at first stage. You are out of time unless Justice Dougherty or Justice Harris have any further questions. I don't see any. Thanks to both of you for your arguments. The case is submitted in the court. We'll now stand in recess until one o'clock this afternoon.